UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>      X

ELIZABETH A. SULLIVAN, CAROL M. DUBOIS,
and JILL M. CASSAS,

        Plaintiffs,

    -against-

TOWN OF DEERPARK, MARK A. HOUSE,
Town Supervisor, sued in his individual capacity,
and WILLIAM R. WERNER, Police Chief, sued
in his individual capacity,

        Defendants.
_____X

**JUDGE ROBINSON**

**COMPLAINT**

**07 CV 11416**

ECF Case

**Jury Trial Demanded**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

I. **INTRODUCTION**

1. Plaintiffs ELIZABETH A. SULLIVAN, CAROL DUBOIS, and JILL CASSAS, police officers for the Town of Deerpark, bring this gender discrimination and retaliation lawsuit pursuant to the Equal Protection Clause of the 14th Amendment to the United States Constitution and the New York Executive Law §296. II.

**PARTIES**

2. Plaintiff Elizabeth A. Sullivan, a Sergeant employed by the Town of Deerpark Police Department, lives in the Town of Deerpark, County of Orange, New York.

3. Plaintiff Carol DuBois, a Police Officer employed by the Town of Deerpark Police Department, lives in Port Jervis, County of Orange, New York.

4. Plaintiff Jill Cassas, a Police Officer employed by the Town of Deerpark Police Department, lives in Middletown, County of Orange, New York.

5. Defendant Town of Deerpark is a municipal entity in the County of Orange organized pursuant to the laws of the State of New York and may sue and be sued.

6. Defendant Mark A. House was the Town Supervisor of the Town of Deerpark at all times relevant to this lawsuit and is sued in his individual capacity. He is a municipal policymaker for the Town.

7. Defendant William R. Werner was the Police Chief of the Town of Deerpark at all times relevant to this lawsuit and is sued in his individual capacity.

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(3) & (4) and 42 U.S.C. §1983. As the State claims arise from the same facts as the Federal claims, this Court has subject matter jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

9. Plaintiffs timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. They have not yet received Notices of Right to Sue. Upon receipt of said Notices, plaintiffs shall file an Amended Complaint incorporating claims pursuant to 42 U.S.C. § 2000e, et seq.

10. The events giving rise to this suit occurred in Orange County, within this Judicial district.

### IV. FACTUAL AVERMENTS

**Elizabeth Sullivan**

11. On December 31, 2000, plaintiff Elizabeth Sullivan commenced employment as a Sergeant in the Town of Deerpark Police Department.

12. In or about 2003, defendant William Werner was out of work on extended medical leave for several months. During this time, Sullivan ran the Police Department.

13. Upon his return to work, Werner began to criticize Sullivan's work, unlike any previous interactions with her.

14. In 2005, Werner's criticisms became more frequent and he became obsessed with asserting control over Sullivan. Werner began to send Sullivan memos concerned with his authority and control.

15. Commencing in 2006, Werner's memos became angry and threatening, including physically threatening Sullivan and threatening her career.

16. From 2005 through 2007, Werner wrote roughly 100 memos to Sullivan criticizing and threatening her. However, during this period, he disciplined her only once pursuant to the collective bargaining agreement, by placing a reprimand in her file.

17. In or about March 2006, pursuant to the Town's Personnel Policy, Sullivan complained to defendant Mark A. House, the Town Supervisor, about Werner's conduct toward her.

18. When House asked Sullivan whether Werner's conduct toward her was motivated by gender, Sullivan replied that it was. House advised Sullivan that the Town would reinstitute the Police Commission which would resolve her complaint.

19. That day, House told Werner of Sullivan's complaint.

20. During spring 2007, Werner secretly used GPS tracking devices in Sullivan's and plaintiff Carol DuBois' police vehicles. He did not use them to track two male police officers who were avoiding duty and sleeping during their shifts.

21. In summer 2006, Sullivan also complained of gender discrimination to Thomas Hoey, Chairman of the Town Police Commission.

22. The Town took no action to remedy any of Sullivan's complaints of gender discrimination.

23. Thereafter, Werner criticized Sullivan for speaking with Town officials and police commissioners and ordered her not to do so again.

24. On August 6, 2007, Werner invited the male officers of the Police Department to go to Hooters in Franklin, New Jersey on August 16. None of the female officers received an invitation to this sexually provocative restaurant.

25. On August 15, 2007, Werner suspended Sullivan from her position, ostensibly because she sold or traded a police badge to another person. Werner threatened to bring criminal charges against Sullivan if she did not resign. Sullivan refused to resign because she had done nothing wrong.

26. On August 16, 2007, Werner and the male officers went to Hooters, leaving no officers on duty that evening in Deerpark. The female officers were not called in to cover the evening shift.

27. Werner's misconduct against Sullivan created a hostile work environment on account of her gender and threatened her job and career. Werner also retaliated against Sullivan for her complaints about his gender discrimination.

**Carol M. DuBois**

28. Plaintiff Carol M. DuBois first applied for employment as a police officer in the Town of Deerpark in 1995. She was initially scheduled to be appointed to this position in 1998. However, because of defendants' failure to properly initiate appointment documents, she was unable to commence employment until September 2000.

29. DuBois has been employed as a part-time officer, limiting her to only 1040 hours per year.

30. Throughout DuBois' employment, she and other female officers have been denied training opportunities that Chief Werner makes available to male officers, including training in radar, investigations, child restraint systems and ATV.

31. DuBois first applied for promotion to full-time status in December 2006. The position was given to Matthew Rohner, a male police officer with significantly less experience than she had.

32. Before making this application, DuBois had spoken on several occasions to Town Supervisor House about her chances of obtaining full-time employment. House told DuBois more than once that Chief Werner did not want women working full-time.

33. Defendants' procedure is to hold applications for promotions for six months. No appointments to full-time status were made during the six months following December 2006.

34. In or about May 2007, Town Supervisor House told DuBois that the school resource officer job would soon be available and that she would be perfect for this full-time position. In addition to stating that Werner would never allow her to have that job because of her gender, DuBois complained to House about Werner's conduct toward her and other women in the Police Department. DuBois made this complaint pursuant to the Town's personnel policy. House agreed that Werner did not want to employ another full-time female officer but said that she still might have a chance at the job.

35. During 2006 and 2007, DuBois also regularly complained to Thomas Hoey, Chairman of the Police Commission, about Werner's conduct toward women police officers.

36. In early September, defendants posted one full-time position for a police officer. DuBois had already submitted an application in August because she believed there would be such an opening and knew that it was department policy to hold the applications for six months.

37. In mid-September, Chief Werner and the Police Commission interviewed DuBois for the position. During the interview, Werner angrily accused her of complaining about him to Supervisor House.

38. On September 24, 2007, the Town appointed Anthony R. Vicaretti, a transfer from the Village of Goshen Police Department, to the full-time position. On September 30, 2007, the Town appointed Thomas J. Kalin, a part-time police officer, to a second full-time position.

39. Both Vicaretti and Kalin are male. At the time of his appointment, Vicaretti did not work for the Town and had left the Town's employ on two previous occasions.

40. At the time of his appointment, Kalin had less than a year of part-time experience as a police officer.

41. Werner's misconduct against DuBois created a hostile work environment on account of her gender. Werner also denied DuBois training opportunities available to male officers. Defendants failed to promote DuBois to a full-time officer and promoted less-qualified males instead. Werner also retaliated against

DuBois for complaining about gender discrimination.

**Jill M. Cassas**

42. In April 2004, plaintiff Jill M. Cassas commenced employment as a part-time police officer for the Town of Deerpark Police Department.

43. In 2006, after receiving many requests from women in the Town for instruction as to the correct installation of child restraint systems, Cassas asked Werner for permission to attend a training course in this subject.

44. Speaking to her in a denigrating manner, Werner replied that there was no money in the budget for such training and that "those women should go to Middletown to the State Police to receive training."

45. Werner has created a hostile work environment for women police officers. He does not talk to women officers and fails to include women police officers in activities.

46. Werner fails to post training opportunities and then hand-selects only male police officers to attend these trainings, denying women training opportunities.

47. In June 2007, Cassas and DuBois complained to defendant House about Werner's treatment of women. House replied, "We know how Bill feels about women. He doesn't want to hire another woman."

48. The Town has a policy and practice of discriminating against female police officers, as evidenced by its systematic mistreatment of plaintiffs and indifference on the part of the Town's policymaker to the Police Chief's discriminatory paractices.

49. As a result of defendants' misconduct, plaintiffs have suffered lost income, lost

promotional opportunities, lost career opportunities as well as pain, emotional distress, humiliation and embarrassment.

## V. CAUSES OF ACTION

50. Plaintiffs incorporate the allegations in paragraphs 1-49 as if fully restated herein.

51. Defendants knowingly and willfully violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating against plaintiffs on account of their gender and retaliating against them for their lawful complaints of discrimination.

52. Defendants knowingly and willfully violated the New York Human Rights Law §296 by discriminating against plaintiffs on account of their gender and retaliating against them for their lawful complaints of discrimination.

WHEREFORE, plaintiffs pray that this Honorable Court:

    a. accept jurisdiction over this matter;

    b. empanel a jury to fairly hear and decide this matter;

    c. award to plaintiffs back and front pay;

    d. award to plaintiffs compensatory damages sustained as a result of defendants' discriminatory practices;

    e. award to plaintiffs punitive damages for defendants' willful and outrageous conduct; and

    f. award any other relief deemed just and proper.

Dated: December 17, 2007
Chester, New York

Respectfully submitted,

S/ *Helen G. Ullrich*
HELEN G. ULLRICH (HU 6597)

BERGSTEIN & ULLRICH, LLP
Counsel for plaintiffs
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277